The next case for argument is In Re Windstream Holdings, Inc. Mr. Loria? Yes, whenever you're ready. Good morning. May it please the court. My name is Thomas E. Loria. I'm with White & Case. We represent U.S. Bank Appellant herein. Equitable mootness should not be something that can be manufactured by courts or parties. Equitable mootness is a court-made rule founded on principles of equity and designed to promote and protect the efficacy of Chapter 11 transactions. But it does not exist in a vacuum. It stands against the statutory right of a party to obtain Article III court review of bankruptcy court orders, including planned confirmation orders, a congressionally provided right that unlike Section 363 sale orders in bankruptcy, does not require seeking or obtaining a stay to pursue. It stands against what the Supreme Court has called a federal court's virtually unflagging duty to exercise its jurisdiction once properly invoked. If it can be manufactured, it can be transformed from an equitable shield to an unfair axe. When this happens, it can be used to vanquish parties' rights. When this happens, courts can avoid or escape exercising their jurisdiction. Certainly there are various policy arguments that could be made regarding equitable mootness, but doesn't our case law support that we do in fact consider that? We do, we look at that. And so the merits of it as a concept in general, that's one thing and I understand the point you're making, but given that our circuit and our case law does acknowledge that that's appropriate and can be considered, what was inappropriate in the application here? The issue is the application and is the outcome equitable? And what happened here, we contend, is not. Equitable mootness should be narrowly construed and cautiously deployed. As stated by this court, it should be a scalpel, not an axe. The lower court here basically founded its dismissal on two things. Number one, that any remedy would knock the props out from under the confirmed and consummated Chapter 11 plan. And two, that the appellant's failure to timely seek a stay made it inequitable to grant relief. Both of these determinations reflect an abusive discretion mandating reversal of the appellate court's decision to dismiss the appeal. With respect to the first issue, let's put the court's ruling in context. The reorganization of WinStream was a multi-billion dollar transaction, multi-billion with a B. Without any evidentiary record whatsoever, it would be impossible for a court- What this court has said, there are really two things there. Number one, when a party has properly act to protect their appellate rights, and I will explain how we did so here, the party who what might happen after closing. Everybody was on notice here. Nobody was lacking notice of our long-pending appeal. Number one. Number two, it's very hard to say, in fact, I would say it's impossible for a court to say, as the district court did, that no remedy could be provided. For example, if the court were to award a dollar or a single share of stock, that clearly would not upset the props of a multi-billion dollar transaction or a significant capital infusion. Is it the case, though, I mean, the way you frame this as that there's no possible remedy that would, that exists, that could be imposed that would not undermine things. I mean, is that the court's duty to figure out, is there some way that I can possibly figure out, and I don't, you know, is there some way that we can undo all of this? I've got to figure this out. We don't have to undo it all. And in fact, this court has previously ruled that it can limit the remedy on appeal, and that the remedy should be determined on the basis of evidence. And our big complaint on this aspect of the ruling below is that there was no evidence. The court determined that no remedy was available without any evidence. And in doing so, it engaged in mere speculation. And when courts speculate, our whole system is in trouble. We expect courts to rely on facts and apply the law. In court, facts have to be based on evidence. Here, there was no evidence with respect to- What about with respect to your delay? We did not delay, Your Honor. We filed our appeal timely. When we came to know that it was going to take two or three months to consummate the plan, rather than running breathlessly from court to court and seeking a stay, which I don't think we could have gotten because there was no urgency, we sought a less intrusive remedy. We asked the district court to give us an expedited briefing schedule. The debtors opposed. The district court denied. So we filed our briefs on an expedited basis, and in fact had all the briefing completed what turned out to be 12 days before the plan was consummated. When we learned that the debtors were preparing to consummate the plan and were going to waive conditions to consummation, we then sprung into action on the stay side. We sought a- Wasn't there, and you can correct me if I'm wrong about what's in the record, but I seem to recall that as early as the confirmation hearing, there had been a statement about the timing of when this could be completed. It said something like August, September. Two or three months, August or September. Right, and this happened in September, so you did have notice as to when this was going to occur. We knew that they had multiple state and federal regulatory conditions that they had to satisfy. They had to get regulatory approvals. In fact, they closed- You said, didn't they, this is when we think we'll be done. So even if you're thinking, that's an early estimate, they won't make that. They said, we'll be done August, September. They were done in September. And we filed our motion for stay in the bankruptcy court 20 days before they closed. We filed our motion for stay in the district court 17 days before they closed. In my world, that's a- Why wait two months to file the motion? Well, we had the case fully briefed, and we thought it could be decided or addressed by the district court before closing. I would have expected the district court to call us in and say, hey, I've got this stay request. When are you going to close? Do I need to have a hearing on the stay request? Can I decide the appeal before you close? Should I issue a stay so I can decide? The district court did none of those things on our request for a stay. Instead, it waited until five weeks after the plan had been consummated to deny our request for a stay as it was at that time. The plan has been substantially consummated at this point. The appeal is then presumptively, equitably moved. The standard review is abuse of discretion. Where's the abuse of discretion? The court found that no remedy could be provided without any evidentiary record to support that. This company had just gone through a chapter 11 confirmation where the bankruptcy court specifically determined that the debtor was emerging from bankruptcy as a feasible company. It had eliminated $3.6 billion of debt from its balance sheet, and it had increased its free cash flow by over $300 million. I don't know how on that record, without more, the district court could find that no remedy is available. So that's error number one, an abuse of discretion, making a finding that is inconsistent with or not supported by any evidence. Abuse of discretion number two is saying that we failed to seek a stay when, in fact, we had sought an expedited relief. And there are court decisions saying that seeking an expedited appeal is a surrogate for a stay. And then we, in fact, did seek a stay in both courts, 20 days and 17 days, respectively, before the plan was consummated. And again, in my world, bankruptcy usually involves a ten day period from confirmation to consummation. So we're running around in that ten day period, maybe four, five, six days before confirmation seeking a stay. First in the bankruptcy court, then in the district court, sometimes in the second circuit. Here, we filed our stay request 20 days and 17 days respectfully, which is a lifetime in the world of bankruptcy. So I think we, the court wrongly found that we did not properly seek a stay. In fact, we did. And I would call that an abuse of discretion. And I would call the outcome inequitable and unfair when you consider the fact that our client is trusting for people who are $1.2 billion and got their claims expunged without ever getting to talk to an Article III court. Thank you. May it please the court, Harker Rhodes for Appelli-Windstream. This appeal, your honors, is resolved by settled law. More than two years ago, the bankruptcy court approved and Windstream consummated the complex financial transactions that it needed to emerge from bankruptcy, which included $750 million in new investment from Windstream's former secured creditors. U.S. Bank now asks this court to reach back more than two years and rewrite the basic bargain on which that reorganization relied by taking the value that secured creditors received in exchange for their secured claims and their new investment and handing that value over to out-of-the-money unsecured creditors instead. As the district court recognized, granting that relief would require unraveling Windstream's completed reorganization and would be deeply inequitable, especially given U.S. Bank's failure to diligently seek a stay of the confirmation order. And what's your response to your adversary's argument regarding the court not having a record to determine, in fact, that there's no remedy that could address this without unraveling? Your Honor, respectfully, that's simply not an evidentiary question. That's a legal issue. And the question there is, is the relief that the appellants are seeking something that effectively targets the plan of reorganization itself and would require undermining the basic bargain on which that reorganization was premised? I direct the court in particular to this court's decision in the charter case. That's at 691 F. 3rd, and in particular, the analysis at pages 485 to 488, where the court makes clear that it's not enough for the appellant to simply come forward with some form of monetary relief that wouldn't itself require sort of formally undoing the confirmation. What the appellant has to put forward is a form of relief that doesn't actually attack the underlying bargain that that reorganization implements. Here, what U.S. Bank is attempting to do is effectively leave the quid in place, leave the $750 million in new investment that the secured creditors put in at the reorganization, but take away the quo that they received by either diluting or forcing disgorgement of those secured creditor shares or by taking away the settlement payments that are due to wind stream under the unity settlement. So that is exactly the kind of disruption of the underlying bargain that the third charter, excuse me, the third Chateau Gay factor looks to. And I think the charter case is also particularly relevant with its analysis of the third factor with respect to the legal conclusions that the appellant's relief requires. So what charter says, again, is that it's not enough just to look at the formal relief that the appellants are requesting, but at the legal theories that they're putting forward in order to justify that relief. Here, the legal theories that the appellants put forward are essentially that there should have been more value in the underlying bankruptcy estate, and so some of that value could have cascaded down the waterfall to the unsecured creditors. How do you meet your adversary's arguments with respect to delay? Your Honor, I think the record is absolutely clear on this point, and I think the district court came nowhere near abusing its discretion in finding that U.S. Bank did not diligently pursue all available remedies to obtain a stay here. Again, it's undisputed that U.S. Bank waited for more than two months after the bankruptcy court entered its confirmation order before making any attempt whatsoever to seek a stay, and then even after those two months, U.S. Bank never actually filed a proper motion for a stay in the bankruptcy court at all. Instead, they filed an unrelated response to a different motion by Windstream and appended, as part of that response, a so-called request for a stay in the bankruptcy court. Then, without... Was a two-month delay unreasonable? Yes, Your Honor, especially in this context. I don't think there's any case that this court has ever... in which this court has ever suggested that a two-month delay after the confirmation is ordered and order is entered could be considered due diligence. And again, it's an abuse of discretion standard here. Well, is there any case that says that it is unreasonable? Your Honor, there's no case that I'm aware of that specifically addresses the question of whether a two-month delay is reasonable, but that just gives more deference to the district court's determination here that the delay was unreasonable. And again, they don't put forward any really plausible explanation for why they waited two months. The record is clear that in the confirmation order itself, this is at JA 617, the debtors made clear that they would be emerging from bankruptcy in September of 2020, that that was their plan, and yet U.S. Bank did nothing whatsoever to preserve its rights from June of 2020 until the first day of September, which is when they filed their procedurally improper request for a stay as part of an unrelated response in the bankruptcy court. What were they seeking to stay? Stay what exactly? Their request for a stay sought to stay the bankruptcy court's confirmation order in order to prevent the sort of consummation of the plan. So to prevent all of the complex transactions that in fact took place more than two years ago in September of 2020. So what happened in the intervening two months? During those intervening two months, the debtors were engaged in all of the work that was necessary in order to emerge from bankruptcy in September of 2020. And there's all kinds of obtaining regulatory approvals and preparing for financial transactions that had to happen in order for the consummation to occur as scheduled. And then in September of 2020, on September 21st, the transactions were in fact finalized and went into effect, and that's the point at which their appeal becomes presumed equitably moot. And all of the Chateau Gay factors need to be met in order for their appeal to avoid equitable mootness. You've made a point of saying that two years have gone by. I mean, are we looking at circumstances now or at circumstances back then in terms of the unraveling, et cetera? Well, Your Honor, formally speaking, this court is reviewing the district court's determination that the appeal was equitably moot at the time the district court ruled. But I think whether you're looking at it from today or whether you're looking at it from the perspective of the district court, which was somewhat closer in time to the substantial consummation of the plan, under either case, there has been that kind of substantial reliance that the equitable mootness doctrine is designed to protect. Again, this is a case where $750 million of new investment went into the reorganized entities from Windstream's former secured creditors, and they had no obligation whatsoever to put that money in. And I think it's unquestionable that they would not have put that money in if, in fact, the confirmation order had been stayed, if U.S. Bank had properly sought a stay with all diligence. Your Honors, I'm happy to address anything else that the court may have questions about. I'm happy to talk about the merits as well. But if there are no further questions, we'll rest on our briefs for the remaining points and ask this court to affirm. Thank you. Thank you. Your Honor, the fact that the debtors are trying to hang on the appellants here, the delay that's occurred since the plan was consummated when the matter was out of our hand is entirely inappropriate. We did everything we needed to do to get the matter before the court, before the plan was consummated. It's not like we didn't- You could have sought a stay immediately instead of waiting two months, right? Your Honor, I'm really not sure that we could have. A stay is like a TRO, and generally it requires urgency, it requires things to be about to happen, to trigger the court, to call people in on very short notice and have a kind of quasi-evidentiary hearing. Here there was no urgency until early September when the debtors told us that they were preparing to close. And we still filed our stay request well in advance of when you would ordinarily do it in connection with the consummation of a bankruptcy case. And I want to mention, I don't think that there's any case that holds that a stay request made before consummation of the plan is improper or untimely. Well, I think one thing that your adversary raised was the question of the, I don't know, the quality, the third. Your stay request was not sort of a traditional, full, standalone, fleshed out stay request. It was something appended to an unrelated issue. That's in the bankruptcy court. And in fact, Rule 8007, which governs the seeking of a stay, doesn't specify the procedural method in which the stay is requested. It merely says that a stay has to be requested in the bankruptcy court, which we did. There's nothing procedurally improper about the way we did that under the rules. Aside from propriety though, does it speak though to a lack of diligence that this was not something that was sort of perhaps fully argued? Well, we filed our stay request in the district court three days later. We asked the bankruptcy for a stay on September 1. Remember, the plan was consummated on September 21. We asked the district court for a stay on September 4th. And nobody quarrels with the form of our request for a stay from the district court. And there's nothing in the rules that requires the bankruptcy stay request to have been disposed of before the district court could take up the stay request. All that's required is that we notify the district court of the request for the stay below, which we did. I want to make sure I get to an important point here. There's been some reference to the merits, okay? In fact, when the Second Circuit has dismissed appeals on the merits for equitable mootness, the first thing the Second Circuit has done is address the merits. And if the court finds that there is a basis for reversal, then it turns to equitable mootness and decides if nevertheless there's no proper remedy. Here, the district court on November 2 ruled that it was going to do that. It was not going to address equitable mootness outside of considering the merits. And in fact, what it then did June the next year, without asking for any further briefing. Remember, all the briefing was completed prior to consummation, so there was no mootness issue when we wrote our briefs. The court never asked for further briefing. The court never issued an order to show cause. The debtors never filed a motion to dismiss the appeal. Out of the blue, the district court dismissed the appeal as moot. That doesn't follow suit, and it gave only cursory treatment to the merits. And in fact, it grossly seemed to misunderstand, as the FLE has done here, mischaracterize the remedy that we seek. So there was no addressing of the merits, and just a cold dismissal of the appeal as equitably moot. And interestingly, the court relied in part on the passage of time, why our appeal sat on its desk as a basis for dismissal as moot. As I said at the top, courts should not be permitted to manufacture mootness, and that is what happened here. This court should reverse the dismissal for mootness and remand to the district court to consider the merits. And if there is a reversal, then the district court with evidence, or the bankruptcy court below, can determine whether or not there is an available remedy. But a company with a new $300 million of additional EBITDA, or earnings, and $3.6 billion of debt can certainly provide some recovery to the $1.2 billion of bonds that we speak for. Thank you. Thank you. Thank you both. We'll take the case under advisement.